UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | CIVIL ACTION NO. 18 CIV 8407 |
| Plaintiff, | COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND |
| v. | CIVIL MONETARY PENALTIES UNDER THE COMMODITY |
| ROYAL METALS GROUP, LLC and CHELSEA GLESS, | EXCHANGE ACT |
| Defendants. | JURY TRIAL DEMANDED |

Plaintiff Commodity Futures trading Commission ("CFTC" or "Commission"), by and through its attorneys, alleges as follows:

## I.      SUMMARY

1.      From at least March 2016 to present (the "Relevant Period"), Defendants Royal Metals Group, LLC ("RMG"), a purported precious metals dealer, and one of its owners, Chelsea Gless ("Gless") (collectively, "Defendants"), defrauded retail clients in connection with precious metals transactions.  Defendants defrauded at least eight retail clients and fraudulently obtained more than $618,000 from these clients.

2.      Defendants and/or agents acting on behalf of Defendants ("Defendants' Agents") communicated with clients and/or financial advisors acting on behalf of clients ("Clients") and represented to Clients that RMG would sell and deliver precious metals to Clients and/or purchase precious metals from Clients for an agreed upon price.  Defendants knew these representations to Clients were false and/or made them with reckless disregard for their truth,

1

and instead of delivering the precious metals and/or paying Clients as represented, Defendants misappropriated their Clients' funds and metals.

3.      During the Relevant Period, Defendants fraudulently obtained funds from at least four of these eight Clients after Defendants and/or Defendants' Agents represented to these Clients that they will deliver precious metals in return for their funds.  Defendants failed to deliver all of the precious metals as represented and instead only made a small delivery of coins and returned a small portion of their funds causing these four Clients to suffer losses in excess of $402,000.

4.      During the Relevant Period, Defendants also fraudulently obtained precious metals, including gold and silver, from at least four of these eight Clients after Defendants and/or Defendants' Agents represented to these Clients that they would be paid in full for their precious metals.  Defendants instead kept the Clients' precious metals and only paid one of these clients approximately $22,000 causing these four Clients to suffer losses in excess of $181,000.

5.      In order to perpetuate and/or conceal this scheme, Defendants made false representations to Clients regarding invalid delivery tracking numbers for their precious metals and/or funds and provided Clients with unsigned checks and checks that could not be cashed due to stop payment orders and/or insufficient funds.

6.      By this conduct the Defendants have engaged, are engaging, or are about to engage in acts and practices in violation Section 6(c)(1) of the Commodity Exchange Act ("Act"), 7 U.S.C. § 9(1) (2012), and Commission Regulation ("Regulation") 180.1(a), 17 C.F.R. § 180.1(a) (2018).

7.      During the Relevant Period, the acts and omissions of Gless and any other managers, employees, and agents of RMG were committed within the scope of their

employment, agency or office with RMG.  Therefore, RMG is liable as a principal for the acts, omissions, and failures of Gless and any other manager, employee, or agent of RMG pursuant to Section 2(a)(l)(B) of the Act, 7 U.S.C. § 2(a)(l)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2018).

8.      Gless was a controlling person of RMG during the Relevant Period and did not act in good faith or knowingly induced RMG's violations of the Act and Regulations described herein.  Therefore, Gless is liable for RMG's violations of the Act and Regulations, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

9.      The Commission brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-l (2012), to enjoin Defendants' unlawful acts and practices, to compel their compliance with the Act and the Regulations promulgated thereunder and to further enjoin them from engaging in certain commodity-related activities.  In addition, the Commission seeks civil monetary penalties, and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and other such relief as the Court may deem necessary and appropriate.

10.      Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.      JURISDICTION AND VENUE

11.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (2012) (codifying federal question) and 28 U.S.C. § 1345 (2012) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, Section 6c(a) of the Act, 7 U.S.C.

§ 13a-1(a) (2012), provides that district courts have jurisdiction to hear actions brought by the Commission for injunctive relief or to enforce compliance with the Act whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in, an act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

12.    Venue lies properly with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Defendants transacted business in this District, and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, or are about to occur in this District.  As alleged in this complaint, Clients were directed to and did in fact deposit their funds into a bank account maintained and controlled by Defendants here in this District.

### III.        THE PARTIES

13.    Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with the responsibility for enforcing the provisions of the Act, 7 U.S.C. §§ 1-27f (2012), and the Regulations promulgated thereunder, 17 C.F.R. Pt. 1-190 (2018).

14.    Defendant **Royal Metals Group, LLC** is an Iowa limited liability company ("LLC"), which was registered as an LLC in 2009 with its last known place of business in Princeton, Iowa.  Another listed address for this company is in Bettendorf, Iowa.  RMG has never been registered with the Commission in any capacity.

15.    Defendant **Chelsea Gless** is a member, manager and part owner of RMG.  Gless's last known address is in Bettendorf, Iowa.  She has never been registered with the Commission in any capacity.

4

## IV.      FACTS

**A**.      **Background**

16.      RMG, a purported precious metals dealer, offered Clients the opportunity to purchase precious metals and/or to sell their precious metals to RMG for an agreed upon price.

RMG's Website

17.      RMG maintained a website, royalmetalsgroup.com ("RMG Website"), which stated that RMG bought and sold physical gold and silver.  The RMG Website informed Clients that the "coin/bullion we offer for sale are commodities traded on various markets, and that the market price and availability of such types of coin/bullion change constantly with supply and demand.  We set the coin/bullion sale price for all coin/bullion that we offer for sale."

18.      In order to induce Clients to invest with RMG, the RMG Website touted and misrepresented RMG as "the industry Gold standard for compliant precious metal purchases. Buying precious metals from other online dealers that do not employ our patent-pending distribution model may put your purchase of physical precious metals at risk."  It also touted to provide a "safe and secure online environment to make precious metal investments that benefit our Clients."

19.      RMG's Website also offered Clients the opportunity to contact RMG's "1600+ contracted registered advisors in over 30 states" to assist Clients in the purchase or sale of precious metals with RMG.  The RMG Website requested that anyone who wants to become a RMG Advisor should call RMG.

20.      RMG's Website further stated that RMG "was formed by Trusted Financial Advisors and insurance agents who were driven to meet their client's need for a stable portfolio in these turbulent economic times.  Royal Metals Group assists agents and clients through every

step of the investment and acquisition process.  We have dedicated ourselves to this mission."

The RMG Website also stated that "we believe that precious metals should be a part of every

client's portfolio.  We believe that as much as 20% to 40% of every client's portfolio should be

in hard assets to provide protection from market loss, inflation, and a fluctuating currency . . . ."

RMG's Financial Filings and Bank Accounts

21.     On October 20, 2009, RMG filed its Certificate of Organization in the State of

Iowa.

22.     In order to perpetrate this scheme, RMG maintained bank accounts in at least

three separate financial institutions in the name of RMG ("RMG Bank Accounts").  One of the

RMG Bank Accounts was located and maintained in New York County and Clients were

directed to and did wire their funds into this New York RMG Bank Account.  Gless had

signatory authority on all of the RMG Bank Accounts.

23.     Documents signed by Gless which have been filed with one of the RMG Bank

Accounts list Gless as a member and manager of RMG and having a 45% ownership interest in

RMG.

**B**.     **RMG's and Gless' Fraudulent Scheme**

24.     Defendants and/or Defendants' Agents communicated directly with Clients who

purchased precious metals from or sold precious metals to RMG and represented to Clients that

the precious metals they purchased from RMG would be delivered upon receipt of  an agreed

upon price.  Defendants and/or Defendants' Agents also represented to Clients that RMG would

pay them a specific amount of cash for the precious metals those Clients sold to RMG.

Defendants knew these representations to Clients were false and/or made them with reckless

disregard for their truth.

25.     Instead of delivering precious metals and paying Clients as represented, Defendants misappropriated both Clients' funds and their precious metals.  Clients' funds deposited into the RMG Bank Accounts were used by Defendants for their own purposes including the payment of airline fees, purchases at Walmart and transfers to accounts controlled by Gless and other third parties.

26.     In order to perpetuate and/or conceal this scheme, Defendants willfully made representations in writing, by mail and email, and by phone to Clients about the delivery of their funds and/or precious metals which were false.  Defendants knew these representations were false and/or made them with reckless disregard for their truth.

### Client Purchases of Precious Metals from RMG

27.     Defendants and/or Defendants' Agents provided Clients with account and routing numbers for the RMG Bank Accounts in order to ensure Clients' funds were properly deposited into these accounts and Clients did in fact deposit their funds into the RMG Bank Accounts.

28.     In July 2017, Client #1 used almost all of the funds from her retirement savings to purchase more than 180 one ounce gold coins from RMG with each coin valued at approximately $1,400.  Client #1 deposited $259,800 into one of the RMG Bank Accounts after Defendants and/or Defendants' Agents represented that RMG would deliver gold coins valued at the agreed upon purchase price.  Defendants knew this representation to Client #1 was false or made it with reckless disregard for its truth.  After Client #1 learned that RMG failed to deliver all of the gold coins as represented, Client #1's daughter communicated directly with Gless. Gless falsely represented to Client #1's daughter that there was a problem with the wholesaler who was supposed to deliver the gold coins.  When Client #1's daughter repeatedly demanded

that Gless provide her with the name of a contact at the purported wholesaler, Gless failed to do

so.  To date, RMG delivered only one gold coin valued at approximately $1,400.

29.     In September 2017, Client #2 deposited over $55,000 into one of the RMG Bank

Accounts after Defendants and/or Defendants' Agents represented that RMG would deliver gold

and silver coins and gold bars valued at the agreed upon purchase price.  Defendants knew this

representation to Client #2 was false or made it with reckless disregard for its truth.  In

September 2017, RMG delivered only 100 silver coins valued at approximately $1,900.  After

RMG failed to deliver any remaining coins or bars, Client #2 communicated with Gless via email

and by phone during October, November and December 2017 as well as again in January 2018,

demanding the return of his funds.  During this time period, Gless continuously falsely assured

Client #2 that all of his funds would be returned.  During November 2017, for example, Gless

provided Client #2 with a delivery tracking number for a check that was never delivered as well

as an invalid delivery tracking number.  Also during November and December of 2017, RMG

sent an unsigned check and another check that Client #2 could not cash due to a stop payment

order being placed on that check.  In December 2017, after Client #2's attorney contacted RMG,

RMG only wired funds totaling $5,300 for the benefit of Client #2.  In January of 2018, Gless

provided Client #2 with a tracking number for a cashier's check that was never delivered.

30.     In September 2017, Client #3 deposited over $49,900 into one of the RMG Bank

Accounts after Defendants and/or Defendants' Agents represented that RMG would deliver gold

and silver coins valued at the agreed upon purchase price.  Defendants knew this representation

to Client #3 was false or made it with reckless disregard for its truth.  After RMG failed to

deliver any gold and silver coins, Client #3 communicated with Gless and demanded the return

of his funds.  In response, Gless falsely represented that she would return his funds and provided

Client #3 with invalid delivery tracking numbers and false information regarding the status of the return of his funds.  RMG sent an unsigned check and another check that could not be cashed by Client #3 due to insufficient funds in that RMG Bank Account.  In January 2018, Client #3 only received small payments from RMG totaling approximately $3,000.

31.     In March 2016, Client #4 deposited over $49,600 into a RMG Bank Account after Defendants and/or Defendants' Agents represented that RMG would deliver gold and silver valued at the agreed upon purchase price.  Defendants knew these representations to Client #4 were false and/or acted with reckless disregard for its truth.  The gold and silver were not delivered as represented and no funds were returned to Client # 4.

Client Sales of Precious Metals to RMG

32.     In November of 2017, Client #5 delivered gold coins to RMG after Defendants and/or Defendant's Agents represented that Client #5 would receive approximately $90,000 for those coins.  Defendants knew this representation to Client #5 was false or made it with reckless disregard for its truth.  Gless provided Client #5 with shipping labels to deliver the gold coins. Client #5 shipped the coins to RMG and, as per the instructions of RMG, sent a form to RMG authorizing the transfer of funds from RMG to Client #5's bank account ("Transfer Form"). After RMG failed to send any funds after receipt of the coins, Client #5 contacted Gless.  Gless falsely informed Client #5 that since Client #5 failed to send RMG the Transfer Form, no funds were sent to Client #5's account.  RMG then sent an unsigned check and another check which Client #5 could not cash due to a stop payment ordered placed on that check.  In December 2017, Gless sent Client #5 an email with an attachment that Gless stated was a document she received from an RMG Bank showing that $88,625.16 was sent by wire from an RMG Bank Account to Client #5.  Client #5 never received this wire and no precious metals were returned to Client #5.

33.     In January 2018, Client #6 delivered gold and silver coins to RMG after Defendants and/or Defendants' Agents represented to Client #6 that she would receive over $18,800 for those metals.  Defendants knew this representation to Client #6 was false or made it with reckless disregard for its truth.  Gless sent Client #6 shipping labels for the precious metals and Client #6 used those labels to deliver the precious metals to RMG.  Client #6 did not receive any funds from RMG nor did RMG return any of the precious metals to Client #6.

34.     In June of 2017, Client #7 delivered eight boxes of silver coins to RMG after Defendants and/or Defendants' Agents represented that Client #7 would receive approximately $60,600 for those coins.  Defendants knew this representation to Client #7 was false and/or acted with reckless disregard for its truth.  Gless provided Client #7 with the shipping labels for the precious metals and Client #7 used those labels to deliver the silver coins to RMG.  Gless represented to Client #7 that two boxes arrived damaged and empty and that she will file a claim with USPS for the loss ("USPS Loss Claim Form").  Client #7 demanded documentation from Gless for the purported USPS Loss Claim Form and Gless failed to provide Client #7 with any such documentation.   RMG also sent a check in the amount of $42,524 that Client #7 was unable to cash due to insufficient funds in that RMG Bank Account.  A total of only $22,000 was received by Client #7 from RMG.  RMG did not return any of these silver coins and/or any other funds to Client #7.

35.     In September 2017, Client #8 delivered 26 gold bars to RMG after Gless represented that Client #8 would receive $34,517.60 for those gold bars.  Defendants knew this representation to Client #8 was false and/or acted with reckless disregard for its truth.  Gless provided Client #8 with the shipping labels for the gold bars and Client #8 used those labels to deliver the gold bars to RMG.  RMG sent three checks, each in the amount of $34,517.60 and all

dated October 23, 2017, which Client #8 could not cash due to: 1) the first check being drawn against an RMG Bank Account that did not have sufficient funds; 2) an RMG Bank's refusal to negotiate the second check; and 3) the third check being drawn against an RMG Bank Account that was closed.  RMG did not return any of the gold bars to Client #8.

**C**.      **Controlling Person Liability**

36.      During the Relevant Period, Gless was a member, manager and 45% owner of RMG.

37.      During the Relevant Period, Gless controlled and was the signatory for the RMG Bank Accounts where Clients' funds were deposited for the purpose of purchasing and/or selling precious metals with RMG.

38.      During the Relevant Period, Gless did not act in good faith or knowingly induced violations of the Act and Regulations, by making false representations to Clients, by misappropriating precious metals from Clients and by using the RMG Bank Accounts to fraudulently receive and misappropriate Clients' funds for her own purposes.

## V.   VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### COUNT ONE

**Violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1)(2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a)(2018)**

**(Fraud in Connection with Sales of Commodities in Interstate Commerce)**

39.      Paragraphs 1 through 38 are re-alleged and incorporated herein by reference.

40.      The precious metals discussed in this Complaint are commodities as defined by Section 1a(9) of the Act, 7 U.S.C. § 1a(9)(2012.

41.      7 U.S.C. § 9(1) makes it unlawful for any person, directly or indirectly, to:

use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate by not later than 1 year after [July 21, 2010, the date of enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act] . . . .

42.   17 C.F.R. § 180.1(a) provides:

It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:
(1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;
(2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading;
(3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

43.   During the Relevant Period, Defendants used or employed manipulative or deceptive devices or contrivances, in connection with contracts of sale of any commodity in interstate commerce, including, but not limited to making false representations of material fact, or omitting material facts necessary to make the statement not untrue or misleading to RMG Clients, such as:

a)  Falsely representing that precious metals would be delivered and/or funds sent to Clients;

b)  Providing Clients with invalid delivery tracking numbers and false information relating to their precious metals transactions; and

c)  Providing Clients with checks that could not be cashed due to insufficient funds and/or stop payment orders.

44.     Moreover, during the Relevant Period, Defendants misappropriated Clients' funds and precious metals and failed to disclose this misappropriation of such funds and precious metals to the Clients.

45.     In connection with this scheme, Defendants used the mails or other instrumentalities of interstate commerce, including, but not limited to:

    a)  Receiving checks and/or wires from Clients residing in multiple states;

    b)  Using the internet to communicate and send precious metal transaction materials and information, via email, to Clients in multiple states;

    c)  Using the internet to solicit Clients in multiple states, via the RMG Website, to engage in precious metal transactions with RMG;

    d)  disseminating invoices for the purchase and/or sale of precious metals via e-mail to customers; and

    e)  making false representations about payments and deliveries of precious metals via e-mail to Clients.

46.     Defendants engaged in the acts and practices described above knowingly, willfully, and/or with a reckless disregard for their truth.

47.     By this conduct, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a). The acts, practices, and the course of business of Defendants, as described above, operated as a fraud upon the Clients.

48.     The acts, omissions, and/or failures of Gless, and any other employees or agents of RMG as described above occurred within the scope of their employment, agency or office with RMG; therefore, RMG is liable as a principal for each act, omission, and/or failure of Gless and other employees or agents of RMG pursuant to Section 2(a)(l)(B) of the Act, 7 U.S.C. § 2(a)(l)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.21 (2018).

49.     During the Relevant Period, Gless controlled RMG, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, RMG's conduct alleged in this count. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), Gless is liable for RMG's violations of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

50.     Each material misrepresentation, false statement or omission made during the Relevant Period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

## VI.     RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its own equitable powers:

A.     Enter an order finding that Defendants violated Sections 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2012);

B.     Enter an order of permanent injunction restraining, enjoining and prohibiting Defendants and any other person or entity in active concert with them, from engaging, directly or indirectly, in conduct in violation of 7 U.S.C. § 9(1) or 17 C.F.R. § 180.1(a);

C.     Enter an order of permanent injunction prohibiting Defendants and any other person or entity in active concert with them from, directly or indirectly:

  i.     Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

  ii.     Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2018)), for their own personal account(s) or for any account in which Defendants have a direct or indirect interest;

iii.     Having any commodity interests traded on Defendants' behalf;

iv.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

v.     Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

vi.     Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018);

vii.     Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2018)), agent, or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)), registered, exempted from registration, or required to be registered with the Commission (except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018)); and

viii.     Engaging in any business activity related to commodity interest.

D.     Enter an order requiring Defendants, as well as any of their successors, to disgorge pursuant to such procedure as the Court may order, all benefits received from the acts or practices described herein that constitute violations of the Act and Regulations, pre-judgment interest from the date of such violations, and post-judgment interest;

E.     Enter an order requiring Defendants, as well as their successors, to make full restitution, pursuant to such procedure as the Court may order, to every person or entity who

sustained losses proximately caused by Defendants' violations (in the amount of such losses), as described herein, plus pre-judgment interest thereon from the date of such violations, plus post-judgment interest;

F.     Enter an order directing Defendants and any of their successors, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the Clients whose funds were received by them as a result of the acts and practices which constituted violations of the Act, as amended, as described herein;

G.     Enter an order directing each Defendant to pay a civil monetary penalty, to be assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, 129 Stat. 584 (2015), title VII, Section 701, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2018), for each violation of the Act and Regulations, as described herein;

H.     Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2) (2012); and

I.       Enter an order providing such other and further relief as this Court may deem

necessary and appropriate under the circumstances.

Dated:           September 14, 2018

                                        Respectfully submitted,

                                        COMMODITY FUTURES TRADING
                                            COMMISSION

                                        By: /s/ Janine Gargiulo
                                        Janine Gargiulo
                                        Senior Trial Attorney
                                        jgargiulo@cftc.gov
                                        (646) 746-9730

                                        Steven Ringer
                                        Chief Trial Attorney
                                        sringer@cftc.gov

                                        Manal Sultan
                                        Deputy Director
                                        msultan@cftc.gov

                                        Commodity Futures Trading Commission
                                        Division of Enforcement
                                        140 Broadway, 19th Floor
                                        New York, NY 10005
                                        Telephone:  (646) 746-9700
                                        Fax:  (646) 746-9940